UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT

----------------------------------------------------
IN RE:                                            )
                                                  )
NELSON ROUETTE and                                )    CASE NO. 13-20250 (ASD)
SANDRA CALVO-ROUETTE,                             )
                                                  )
          DEBTORS.                                )    CHAPTER 7
----------------------------------------------------
                                                  )
DYNAMIC INTERNATIONAL, INC.,                      )
                                                  )
          PLAINTIFF,                              )    ADV. PRO. NO. 13-02014
V.                                                )
                                                  )    RE: ADV. ECF NO. 36
NELSON R. ROUETTE and                             )
SANDRA CALVO-ROUETTE,                             )
                                                  )
          DEFENDANTS.                             )
----------------------------------------------------

APPEARANCES:

Mark H. Dean, Esq.                     Attorney for Plaintiff,
Mark H. Dean, P.C.                     Dynamic International, Inc.
241 Main Street
Hartford, CT 06106

Richard S. Conti, Esq.                 Attorney for Debtors/Defendants,
Diana Conti & Tunila, LLP              Nelson R. Rouette and
1091 Main Street                       Sandra Calvo-Rouette
Manchester, CT 06040

**MEMORANDUM OF DECISION ON PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT**

ALBERT S. DABROWSKI, Chief United States Bankruptcy Judge

## I. INTRODUCTION

In the above captioned adversary proceeding, the Plaintiff, Dynamic International, Inc. (hereinafter, "Dynamic" or "Plaintiff"), has filed *Plaintiff's Motion for Partial Summary Judgment* (hereinafter, the "Motion"), Adv. ECF No. 36, requesting the Court to find its claim against the Defendants, Nelson R. Rouette (hereinafter, "Rouette") and Sandra Calvo-Rouette (hereinafter, "Calvo-Rouette" or together with Rouette, the "Defendants") nondischargeable under Bankruptcy Code §523(a)(6). In support of its request, Dynamic relies on the alleged preclusive effect of a prior partial summary judgment it obtained by default in a Connecticut state court action[1] (hereinafter, "State Court Action" or "State Court") against the Defendants' closely-held corporation, Quality Machine Solutions, Inc. (hereinafter, "QMS") and Rouette for conversion and civil theft, and to pierce the corporate veil between Rouette and QMS. For the reasons discussed hereinafter, the Court finds that a summary judgment may not enter in this adversary proceeding because the partial summary judgment entered in the State Court Action is not entitled to preclusive effect in this Court. Accordingly, the Motion shall be denied.

## II. JURISDICTION

The United States District Court for the District of Connecticut has jurisdiction over the instant adversary proceeding by virtue of 28 U.S.C. § 1334(b), and this Court derives its authority to hear and determine this proceeding on reference from the District Court pursuant to 28 U.S.C. §§ 157(a), (b)(1) and the District Court's General Order of Reference

---

[1] The State Court Action was captioned, *Dynamic International, Inc. v. Quality Machine Solutions, Inc., et. al.*, Connecticut Superior Court, Judicial District of Hartford, Docket No. HHD CV08-5025954-S.

dated September 21, 1984. This is a "core proceeding" pursuant to 28 U.S.C. §157(b)(2)(I).

### III.  BACKGROUND

*A.  Stipulation of Facts*

The Plaintiff and the Defendants have agreed upon a Stipulation of Facts and supporting documentary evidence, Adv. P. ECF No. 35, Part 1 (Stipulation), Parts 2-8 (Attachments), and have asked that the Court consider them as true and established for the purposes of determining the Motion.  As determined relevant to this decision by the Court, the following facts, set forth in the Stipulation of Facts, are adopted as follows:

1. Dynamic is a Wisconsin corporation with a principal place of business at N25 W23287 Paul Road, Pewaukee, Wisconsin.

2. At all relevant times, Rouette was a shareholder, director and the president of QMS.

3. At all relevant times, Calvo-Rouette was a shareholder, director and the Vice-president of QMS.

4. By three sales contracts, each dated May 20, 2008 (the "First Second and Third Contracts," respectively) between Dynamic and QMS, QMS agreed to purchase three computerized milling machines referred to as VP600s and certain accessories and services identified in the contracts for the sum of $177,453.70 each, to be paid "10% down, net 60 after install."

5. Paragraph eight of the Terms and Conditions section of the First, Second and Third Contracts provide as follows:

   **Security Interest.** PURCHASERS hereby grants to DYNAMIC and DYNAMIC hereby retains a purchase money security interest in all of the

goods sold by DYNAMIC and held by PURCHASER hereunder and all replacements therefor, additions thereto, and goods made therefrom (the "Collateral") to the fullest extent provided under the Uniform Commercial Code. The PURCHASER specifically authorizes the filing by DYNAMIC of an initial Financing Statement; an amendment that adds Collateral or that adds a debtor covering the Collateral. PURCHASER shall keep the Collateral free from any adverse lien, security interest or encumbrance and will not waste or destroy the collateral or any part thereof or use or store the collateral in violation of any statute or ordinance.  Adv. ECF No. 35-1.

6. The VP600s sold pursuant to the First, Second and Third Contracts were delivered to TurboCare, a third-party customer of QMS and installed by QMS.

7. QMS received payment from TurboCare on or before January 12, 2009 for the three VP600s that QMS purchased from Dynamic and re-sold them to TurboCare for sums in excess of the amounts due from QMS to Dynamic on the First, Second and Third Contracts.

8. Dynamic claimed that upon receipt of payment(s) from Turbo Care, QMS did not remit payment to Dynamic on the balance of purchase price due under the First, Second and Third Contracts. QMC, Rouette and Calvo-Rouette disputed the debt claimed by Dynamic.

9. On or about December 31, 2008, Dynamic commenced the State Court Action against QMS, seeking to recover sums owed from QMS to Dynamic on account and for breach of the First, Second, and Third Contracts. Later, additional causes of action against QMS for conversion, civil theft, unjust enrichment, and violation of the Connecticut Unfair Trade Practices Act ("CUTPA") Conn. Gen. Stat. §42-110a *et seq*., were added in the State Court Action.

10. On or about July 22, 2009, Rouette was joined as a defendant in the State Court Action and causes of action were asserted against him for conversion, civil theft, unjust enrichment, violation of CUTPA, and to hold him liable for the debts of QMS to Dynamic based on the piercing of the corporate veil of QMS. The conversion and civil theft claims against Rouette were based on a claim that he misappropriated Dynamic's secured proceeds.

11. On or about August 18, 2010, a Second Amended Complaint was filed and Calvo-Rouette was joined as a defendant in the State Court Action and a claim was asserted against her to hold her liable for QMS debts to Dynamic based on the piercing of the corporate veil of QMS.

12. On or about August 26, 2010, Rouette's prior attorneys, Updike, Kelly and Spellacy, filed a Motion to Strike and a Memorandum in Support of Motion to Strike in the State Court Action. This motion was never acted upon in the State Court Action due to the defaults entered against Rouette for discovery noncompliance and failure to plead as set forth below.

13. Thereafter, the State Court granted Updike, Kelly and Spellacy's Motion to Withdraw Appearance by order dated September 13, 2010, and on October 12, 2010, QMS was defaulted for failure to appear after the withdrawal of counsel.

14. Rouette and Calvo-Rouette filed *pro se* appearances in the State Court Action on or about October 18, 2010.

15. On or about July 25, 2011, a default judgment for $458,117.87 was entered against QMS in the State Court Action on Dynamic's claim for sums due.

16. Dynamic filed a Motion for Discovery Sanctions and/or Order of Compliance dated November 9, 2010 against Rouette in the State Court Action. An order dated November 22, 2010, was entered by the State Court ordering his compliance.

17. Thereafter, Dynamic filed a Motion for Default for Failure to Plead, dated November 23, 2010 against Calvo-Rouette, and on December 1, 2010, a default was entered against her for failure to plead.

18. On January 19, 2011, Dynamic filed a Motion for Default for Failure to Comply With Discover Order against Rouette. Dynamic also filed on January 19, 2011, a Motion for Discovery Sanctions and/or Order of Compliance against Calvo-Rouette.

19. In an order entered by the State Court dated February 24, 2011, Calvo-Rouette was ordered to comply with discovery by March 7, 2011 or be defaulted. Calvo-Rouette did not comply with the discovery served on her by March 7, 2011 and was defaulted for discovery noncompliance.

20. On June 7, 2011, the State Court entered an order of default due to discovery noncompliance against Rouette.

21. Dynamic filed a Motion for Summary Judgment against QMS, Rouette and Calvo-Rouette, dated July 19, 2011. It sought summary judgment on Dynamic's conversion, civil theft, CUTPA and corporate veil counts contained in the Second Amended Complaint (Counts Five, Six, Eight and Nine, respectively).

22. Rouette filed a motion dated November 21, 2011 seeking a continuance of

a scheduled December 5, 2011 hearing on Dynamic's Motion for Summary Judgment which motion was granted, and the State Court continued the hearing on Dynamic's Motion for Summary Judgment to December 19, 2011. Neither Rouette nor Calvo-Rouette filed an opposition to the Motion for Summary Judgment and it was granted in a Memorandum of Decision dated March 30, 2012.

23. On April 12, 2012, new counsel appeared for Rouette and Calvo-Rouette in the State Court Action and filed a Motion to Open Judgment Upon Default and a Motion to Alter Terms of Judgment. Dynamic objected to both motions.

24. On May 9, 2012, Rouette and Calvo-Rouette filed an appeal from the granting of summary judgment which was thereafter withdrawn on June 15, 2012, because there was no final appealable judgment against Rouette.

25. A Corrected Memorandum of Decision Motion for Summary Judgment (hereinafter, the "Corrected Decision"), Adv. ECF No.35, Part 8, Exh. HH, was issued on May 14, 2012 and summary judgment as to liability was entered as to Rouette only. Dynamic was ordered to claim the matter for a hearing in damages.

26. Thereafter, Rouette filed an Amended Motion to Open Judgment Upon Default, dated June 14, 2012, in response to which Dynamic filed an Objection to Amended Motion to Open Judgment Upon Default, dated June 19, 2012. An order dated July 10, 2012 was entered by the State Court denying the motion to open the judgment.

**B.     *The Corrected Memorandum of Decision Motion for Summary Judgment***

In the Corrected Decision, the State Court held as to Count Five, that the defaults entered against Rouette and Calvo-Rouette, constituted admissions as to the facts alleged in the Second Amended Complaint and that Dynamic's allegations satisfied the elements of a cause of action for conversion, in that it had adequately alleged that (i) QMS had received payment from TurboCare for the three machines in excess of the amount due Dynamic; (ii) that Dynamic's security interest in the machines had attached by law; (iii) that despite demand having been made, QMS did not pay over to Dynamic the amounts due and had spent and misappropriated the proceeds to pay other obligations; and (iv) that QMS and Rouette had sold the machines to TurboCare despite the rights of Dynamic as a secured party.

As to Count Six, the State Court also held that the defaults entered against QMS and Rouette, constituted admissions as to the facts alleged in the Second Amended Complaint and that Dynamic's allegations satisfied the elements of a cause of action for civil theft.  The State Court relied upon the same allegations made by Dynamic to establish conversion.  It concluded however, that unlike conversion, a "finding of liability for statutory theft required proof of the additional element of intent to deprive another of his property . . . ," quoting from *Mystic Color Lab, Inc. v. Auctions Worldwide, LLC*, 284 Conn. 408, 934 A.2d 227 (2007).  It nevertheless held that Dynamic had adequately established the element of intent through its allegations that "'QMS has received payment from TurboCare for the three [machines] . . . in excess of the amounts due to [the plaintiff]' and despite the plaintiff's demand, QMS and Rouette 'spent and misappropriated those funds by using them to pay other obligations,'" and also through the allegation that "the defendants knew

8

that the plaintiff had a security interest in the machines, as evidenced by the three contracts they entered into with the plaintiff." Corrected Decision pp. 6-7.

The State Court denied the Plaintiff's motion for summary judgment as to Count Eight's claim of a CUTPA violation which the Plaintiff alleged was deemed proven by virtue of the State Court's determination of QMS' and Rouette's conversion and theft of the proceeds. The State Court determined that the conclusory allegations contained in the Second Amended Complaint were not sufficiently pled with particularity to enable it to determine if the Defendants' activities were "either immoral, unethical, unscrupulous or offensive to public policy . . . ," as required by CUTPA, citing *Harris v. Bradley Memorial Hospital and Health Center, Inc.*, 296 Conn. 315, 350-351, 994 A.2d 153 (2010). Corrected Decision pp. 7-9.

With respect to Count Nine, in which Dynamic sought to pierce the corporate veil and hold the individual Defendants responsible for the actions of QMS, the State Court held that "the court is bound by the allegations in the Second Amended Complaint to support piercing the corporate veil under the instrumentality test, as a result of the defaults entered against Rouette and the defaults entered against Calvo-Rouette."

Count Nine incorporates by reference all the previous counts of the Second Amended Complaint and further alleges that: (i) "Rouette and Calvo-Rouette were the sole officers, directors, and stockholders of QMS and had complete dominion and control of the finances, policies, and business practices of that corporation such that QMS never had or ceased to have any separate mind, will or existence of its own;" (ii) "Rouette and Calvo-Rouette used their control over QMS to commit a fraud or wrong and in violation of its positive legal duty to remit payment to [the Plaintiff] for the aforementioned machines"; and

9

(iii) "[t]here is a unity of interest and ownership of QMS by and between Rouette and Calvo-Rouette such that the independence of the corporation has in effect ceased or never began . . . . Rouette and Calvo-Rouette are, in effect, the alter egos of QMS and QMS is their mere instrumentality." Corrected Decision p. 11.

However, while the State Court entered summary judgment against Rouette establishing his personal liability for the sums owed by QMS under the piercing the corporate veil theory, it refused to do so as to Calvo-Rouette, pointedly noting on pages 11 and 12:

> Calvo-Rouette has not been accused of any wrongdoing in the previous eight counts of the complaint, which are incorporated by reference in count nine. Conspicuously absent from those counts is an allegation that Calvo-Rouette participated in the misappropriation of the plaintiff's proceeds or otherwise committed a wrongful act. Therefore, despite her default, count nine, standing alone, cannot establish liability as to Calvo-Rouette on the theory of piercing the corporate veil.

### C.  The Bankruptcy Case and Adversary Proceeding

On February 8, 2013, prior to the State Court holding a Hearing in Damages, Rouette and Calvo-Rouette commenced the instant bankruptcy case by filing a petition under Chapter 7 of the Bankruptcy Code, thereby staying the State Court Action pursuant to the automatic stay provision of §362(a).  On April 2, 2013, the Plaintiff commenced the above captioned adversary proceeding against the Defendants by filing an adversary complaint (hereinafter, the "Complaint"), Adv. ECF No. 1, seeking a determination that the actions and/or conduct of the Defendants, constituted conversion, civil theft, a violation of the CUTPA and a determination that the corporate veil of QMS should be pierced and Rouette and Calvo-Rouette held personally liable for the sums owed by QMS to the

Plaintiff. Following the Court's denial on May 30, 2013 of the *Defendants' Motion to Strike* parts of Dynamic's Complaint, Adv. ECF No. 17, the Defendants filed on June 18, 2013, an *Answer and Affirmative Defenses,* Adv. ECF No. 23, alleging as Affirmative Defenses that the State Court Action is not a final judgment and is not entitled to either collateral estoppel or *res judicata* effect, and on June 20, 2013, Dynamic filed a *Reply to Affirmative Defenses,* Adv. ECF No. 24, by denying the Affirmative Defenses in their entirety. On November 14, 2013, Plaintiff and the Defendants filed the Stipulation of Facts*,* with Attachments. Dynamic filed its *Motion for Partial Summary Judgment* (hereinafter, the "Motion"), Adv. ECF No. 36-1*, Plaintiff's Memorandum in Support of Motion for Partial Summary Judgment,* Adv. ECF No. 36-2 and Cases, Adv. ECF No. 36-3, *o*n November 20, 2013*,* and the Defendants filed on *December 12, 2013,* their *Memorandum in Opposition to Plaintiff's Motion for Partial Summary Judgment* with supporting affidavit. Adv. ECF No. 37.

In the Motion, the Plaintiff claims (i) that the findings in the partial summary judgment determined in the State Court Action are binding upon Rouette under the doctrines of *res judicata* or collateral estoppel and (ii) are sufficient to establish that Rouette's liability to the Plaintiff resulted from willful and malicious injury to Dynamic or the property of Dynamic and is therefore nondischargeable under Bankruptcy Code § 523(a)(6). The Plaintiff also asks the Court to determine if the piercing of the corporate veil as to Calvo-Rouette would, standing alone be sufficient to impute to Calvo-Rouette QMS's alleged willful and malicious injury to Dynamic due to QMS's conversion and theft of Dynamic's property.

### IV. DISCUSSION

*A. Summary Judgment Standards*

Federal Rule of Civil Procedure 56(a), made applicable to these proceedings by Fed. R. Bankr. Pro. 7056, directs that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Upon consideration of a motion for summary judgment, "the judge's function is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *see also Jasco Tools, Inc. v. Dana Corp.* (*In re Dana Corp.*), 574 F.3d 129, 151 (2d Cir. 2009).

The moving party has the burden of showing that there are no material facts in dispute, and all reasonable inferences are to be drawn, and all ambiguities resolved, in favor of the non-moving party. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *see also United Transp. Union v. National R.R. Passenger Corp.*, 588 F.3d 805, 809 (2d Cir. 2009). The Court, in ruling upon a summary judgment motion, "cannot try issues of fact, but can only determine whether there are issues of fact to be tried." *R.G. Group, Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 77 (2d Cir.1984), quoting *Empire Electronics Co. v. United States*, 311 F.2d 175, 179 (2d Cir. 1962).

*B. Collateral Estoppel*

The Plaintiff argues that the doctrine of collateral estoppel, or res judicata[2] as

---

[2] "Res judicata or claim preclusion prevents a litigant from reasserting a claim that has already been decided on the merits." *Virgo v. Lyons*, 209 Conn. 497, 501 ( 1988) (citation omitted). However, "res judicata is generally inapplicable to dischargeability proceedings in bankruptcy." *See Syncom Indus. v. Wood (In re Wood)*, 488 B.R. 265, 272 (Bankr. D. Conn. 2013), generally citing, *Brown v. Felsen*, 442 U.S. 127 (1979).

applied to the State Court Action, conclusively establishes all of the facts necessary to a determination by this Court that its claim against the Defendants is nondischargeable under Bankruptcy Code §523(a)(6), thereby barring the Defendants from relitigating those issues in the instant adversary proceeding.

"The United States Supreme Court has confirmed that the doctrine of collateral estoppel is available to litigants in bankruptcy matters, and specifically in the context of dischargeability proceedings under 11 U.S.C. § 523(a)." *In re Bugnacki*, 439 B.R. 12, 23 (Bankr. D.Conn. 2010) (citing *Grogan v. Garner*, 498 U.S. 279, 285 n.11 (1991)). "The party seeking to utilize the doctrine of collateral estoppel has the ultimate burden of proving the elements necessary for its application." *In re Conway*, 418 B.R. 772, 776 (Bankr. D.Conn. 2009) (citing, *e.g.*, *In re Swirsky*, 372 B.R. 551, 562 (Bankr.D.Conn. 2006)).

Under the Full Faith and Credit Doctrine, as codified by 28 U.S.C. § 1738, unless an exception applies, a federal court is required to give a state court judgment the same preclusive effect as would a sister court of the judgment state. *Allen v. McCurry*, 449 U.S. 90, 96 (1980). Thus, in the instant case this Court must look to Connecticut law to determine whether the State Court Action precludes the Defendants from contesting facts material to the Plaintiff's dischargeability claims. *In re Swirsky*, 372 B.R. 551, 562 (Bankr. D. Conn. 2006) (citing *Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 380, 105 S.Ct. 1327 (1985); *Spencer v. Bogdanovich (In re Bogdanovich)*, 292 F.3d 104, 110 (2d Cir. 2002)).

Under Connecticut law,

> [t]he fundamental principles underlying the doctrine are well established. "Collateral estoppel, or issue preclusion, is that aspect of res judicata which prohibits the relitigation of an issue when that issue was *actually litigated* and

13

> *necessarily determined* in a prior action between the same parties upon a different claim. . . . For an issue to be subject to collateral estoppel, it must have been *fully and fairly litigated in the first action*. It also must have been *actually decided* and the decision must have been necessary to the judgment. . . . *Virgo v. Lyons*, 209 Conn. 497, 501, 551 A.2d 1243 (1988); *see also Ashe v. Swenson*, 397 U.S. 436, 445, 90 S. Ct. 1189, 25 L. Ed. 2d 469 (1970); *State v. Hope*, 215 Conn. 570, 584, 577 A.2d 1000 (1990), *cert. denied*, 498 U.S. 1089, 111 S. Ct. 968, 112 L. Ed. 2d 1054 (1991).
>
> An issue is *actually litigated* if it is properly raised in the pleadings or otherwise, submitted for determination, and in fact determined. . . . 1 Restatement (Second), Judgments § 27, comment (d) (1982). An issue is *necessarily determined* if, in the absence of a determination of the issue, the judgment could not have been validly rendered. . . . If an issue has been determined, but the judgment is not dependent upon the determination of the issue, the parties may relitigate the issue in a subsequent action." (Citations omitted; emphasis in original; internal quotation marks omitted.) *Lafayette v. General Dynamics Corp.*, 255 Conn. 762, 772-73, 770 A.2d 1 (2001), quoting *Jackson v. R. G. Whipple, Inc.*, 225 Conn. 705, 714-15, 627 A.2d 374 (1993); *see Gladysz v. Planning & Zoning Commission*, 256 Conn. 249, 260-61, 773 A.2d 300 (2001).

*R & R Pool & Patio, Inc. v. Zoning Bd. of Appeals*, 257 Conn. 456, 466 (2001). (emphasis in original).

However, because as discussed hereinafter, the Court concludes that the State Court Action failed to "actually decide" all of the elements necessary for this Court to determine by summary judgment that Rouette's liability to Dynamic is non-dischargeable under Bankruptcy Code §523(a)(6), it will be unnecessary for the Court to consider whether the "issue was fully and fairly litigated," or "necessary to the judgment." Insofar as the Motion concerns Calvo-Rouette, the Corrected Decision expressly makes clear that there were no allegations in the state pleadings suggesting by a preponderance of evidence that Calvo-Rouette in any way participated in the sale of Dynamic's assets and/or the decision not to use the sale proceeds to pay Dynamic as required by the security agreement. Consequently, there is no basis to enter summary judgment as to Calvo-Rouette.

**C.     *"Willful and Malicious Injury" Under Bankruptcy Code §523(a)(6)***

The subsections of Bankruptcy Code §523(a) relevant to the present proceeding provide: "(a) A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt— . . . (6) for willful and malicious injury by the debtor to another entity or to the property of another entity. . . ."

A creditor seeking to establish nondischargeability under this or any other section of 523(a) must do so by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. at 291; *Orr v. Marcella (In re Marcella)*, 463 B.R. 212, 219 (Bankr. D. Conn. 2011). In *Kawaauhau v. Geiger*, 523 U.S. 57, 61(1998), the United States Supreme Court made clear that "willful" as referenced in that section means "a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury." *Id*. "'For estoppel to apply, the fact sought to be foreclosed by [the Movant] must necessarily have been determined in his favor in the prior trial; it is not enough that the fact may have been determined in the former trial. . . . The [Movant] has the burden of showing that the issue whose relitigation he seeks to foreclose was actually decided in the first proceeding.' (Citation omitted; internal quotation marks omitted.) *State v. Aparo*, 223 Conn. 384, 406, 614 A.2d 401 (1992), *cert. denied*, 507 U.S. 972, 113 S. Ct. 1414, 1415 (1993)." *Dowling v. Finley Assocs*., 248 Conn. 364, 377(1999).

Although the State Court determined that Rouette had the intent to deprive Dynamic of its property when Rouette and QMS used Dynamic's property to pay other creditors, this determination alone, even coupled with the Stipulation of Facts, is insufficient to support a determination by a preponderance of evidence that Rouette actually intended to cause injury to Dynamic by his conduct. "[I]f there is any evidence in the record from any source

15

from which a reasonable inference could be drawn in favor of the nonmoving party, summary judgment is improper." *St. Pierre v. Dyer*, 208 F.3d 394, 404 (2d Cir. 2000) (citations omitted). There is nothing in the present record to support a finding that the State Court determined that Dynamic suffered an injury inflicted by Rouette *for the specific purpose of causing injury*, as opposed to an injury arising as a consequence of Rouette's wrongful conduct in ignoring his obligations under the security agreement.³

Moreover, nowhere in the present record is there any suggestion that Rouette acted with "malicious" intent, the second prong of Code §523(a)(6). The "malice" requisite of §523(a)(6) is distinct from the "wilfulness" element and the two elements cannot be "lumped" together. The term "malicious" can involve actual or constructive malice, and "means wrongful and without just cause or excuse, even in the absence of personal hatred, spite, or ill-will." *Navistar Financial Corp. v. Stelluti* (*In re Stelluti*), 94 F.3d 84, 88 (2d Cir.1996). The conduct giving rise to certain causes of action may be inherently malicious, such as malicious prosecution or assault. *Novartis Corp. v. Luppino* (*In re Luppino*), 221 B.R. 693, 700 (Bankr. S.D.N.Y.1998). In other cases, malice may be easily deduced where "the debtor's conduct giving rise to liability has no potential for economic gain or other benefit to the debtor, from which one could only conclude that the debtor's motivation must have been to inflict harm upon the creditor." *Id.* However, in cases where a debtor seeks profit or some other benefit, "the underlying conduct, however deplorable, would not give

---

³"[A] more encompassing interpretation [of §523(a)(6)] could place within the excepted category a wide range of situations in which an act is intentional, but injury is unintended. . . . *A knowing breach of contract could also qualify*. A construction so broad would be incompatible with the well-known guide that exceptions to discharge 'should be confined to those plainly expressed.'" *Kawaauhau v. Geiger*, 523 U.S. 57, 61-64 (emphasis added; citations and internal quotation marks omitted).

16

rise to liability under § 523(a)(6) in the absence of some additional, aggravating conduct on the part of the debtor of sufficient gravity to warrant an inference of actual malice under the Second Circuit decision in [*Stelluti*]." *Id.*

Here there is no evidence, disputed or otherwise, to suggest that Rouette acted to deprive Dynamic of its rights to the proceeds of the sale by reason of malice or for any reason other than the obvious - that there was a creditor which Rouette chose to pay first and thought that it was in his and/or QMS's financial interest to do so. Unlike in *NBA Props. v. Moir (In re Moir)*, 291 B.R. 887, 892 (Bankr. S.D. Ga. 2003), a case in which the court determined that judgments for conversion can constitute a "willful and malicious injury," the court there relied heavily on the determination in the prior district court case to award punitive damages. By contrast here, when Dynamic sought summary judgment as to Count Eight, which included the CUTPA claim, the State Court noted in denying the request, that the allegations of the Second Amended Complaint upon which it was relying, contained no specific allegations suggesting that Rouette had acted immorally, unethically, unscrupulously or in a way offensive to public policy.

As it concerns Calvo-Rouette, there is no evidence in the record of the State Court Action evidencing any particular conduct on the part of Calvo-Rouette that caused injury to Dynamic, let alone a willful and malicious injury. Even if the State Court had entered summary judgment against Calvo-Rouette, holding her liable for the actions of QMS on the basis of a piercing of the corporate veil, that would still not have permitted this Court to apply collateral estoppel to find that Calvo-Rouette possessed the intent to cause willful and malicious injury to Dynamic within the meaning of Bankruptcy Code §523(a)(6).

## V. CONCLUSION

For the purposes of summary judgment, the Plaintiff has failed to show that there is no genuine issue as to any material fact or that the Plaintiff is "entitled to judgment as a matter of law." Nor has the Plaintiff demonstrated that the State Court Action established by a preponderance of the evidence for collateral estoppel purposes the facts necessary to a determination that its claim against the Defendants is nondischargeable under Bankruptcy Code §523(a)(6).

An Order denying Plaintiff's Motion for Partial Summary Judgment, Adv. ECF No. 36, and scheduling trial of this adversary proceeding shall enter simultaneously herewith.

Dated: June 12, 2014                                                                                 BY THE COURT

*[signature]*

Albert S. Dabrowski
Chief United States Bankruptcy Judge